**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTON GLENZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>RCI, LLC, formerly known as Resort Condominiums International, LLC, a New Jersey Corporation,<br><br>    Defendant. | Civil Action No.: 09-cv-378 (PGS)<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

    This is a putative class action brought on behalf of individuals who participate in a timeshare exchange system known as the RCI Points Exchange Program. Plaintiff Anton Glenz ("Plaintiff") alleges that, among other things, defendant RCI, LLC ("Defendant or RCI") violated the New Jersey Consumer Fraud Act by failing to provide Points Exchange members sufficient access to RCI-affiliated resorts. Currently before the Court is Defendant's motion to dismiss the complaint or alternatively for a more definite statement. For the following reasons, Defendant's motion is granted in part and denied in part.

    **I.    BACKGROUND**

    RCI is a self-professed pioneer in the timeshare industry whose core business is timeshare

exchanges. RCI offers its members two methods of timeshare exchange, the Points Exchange Program and the Weeks Exchange Program.[1] Under the Points Exchange Program, in return for an annual fee, an RCI member can deposit a timeshare with RCI (what RCI calls the "Spacebank") and receive points. (Compl. ¶ 18.)[2] The amount of points awarded to a member is dependant upon a number of factors: the supply and demand at the requested resort location; the type of unit; the season; and evaluations of other members who have stayed at the requested resort. (*Id.*) Once points are allotted, members can make reservations at RCI-affiliated resorts or exchange points for hotels, rental cars, cruises, airfare and entertainment. (*Id.*) A member's particular destination choice, however, is not guaranteed. Rather, reservations are dependant upon the amount of points held by the member, the timing of the request, and the availability of the requested destination. (Def. Appx. Ex. A. ¶ 7.)

Although the process for using and obtaining points is advertised as straightforward and convenient, Plaintiff has never successfully reserved his desired destination. (Compl. ¶ 44.) On six occasions, Plaintiff unsuccessfully attempted to book a trip through the Points Exchange Program: (1) Chicago, Illinois in 2005; (2) Outer Banks, North Carolina in May 2004; (3) Mackinac Island,

---

[1] The Weeks Exchange Program was subject to a separate lawsuit before this Court. *In re Resort Condominiums Int'l*, Civil Action No. 06-cv-1222 (PGS).

[2] The Participation Agreement for the Points Exchange Program is not attached to the complaint. Nonetheless, because the agreement is integral to the complaint, the Court may consider it on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). The Court notes, however, that Defendant's method of presenting the Participation Agreement through an appendix rather than an affidavit, certification or declaration in accordance with 28 U.S.C.A. § 1746 is procedurally improper. *Cf. Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 996 (10th Cir. 1997). Nonetheless, having received no objection, the Court considers the Participation Agreement in its analysis of Defendant's motion to dismiss.

Michigan in August 2004; (4) Eureka, Arkansas in Spring 2005; (5) Jackson Hole, Wyoming (date not provided); and (6) Rapid City, South Dakota (date not provided).  But on each occasion, either nothing was available, or Plaintiff needed to book his trip further in advance.  (*Id.* ¶ 43.)  On one occasion, Plaintiff accepted an alternative location offered by RCI, but the accommodations were not comparable to his own unit at the Sunset Ridge Resort in Pigeon Forge, Tennessee.  (*Id.* ¶¶ 41, 44.)[3]  Plaintiff allegedly attributes his lack of success in reserving destinations primarily to four wrongful practices, which dilute the quality and quantity of vacation time.

First, RCI rents units to third parties, minimizing access to Points Members to many resorts. (*Id.* ¶¶ 25-29.)  Although Plaintiff acknowledges that timeshare rental is generally permitted,[4] he complains of the degree to which timeshares are rented to third parties, particularly in light of his "false belief that access to Vacation Time is completely or almost completely limited to RCI members . . . ." (*Id.* ¶ 23.)[5]  In Plaintiff's view, RCI should only permitted to rent timeshares when no Points member has requested or would want a destination.  (*Id.* ¶ 28.)  As confirmation of this, Plaintiff points to statements made by John R. Barrows ("Barrows"), Director of Communications for RCI, who stated in a letter to *The Timeshare Beat* that "no RCI member's right to a fair exchange

---

[3] In May 2004, Plaintiff purchased his timeshare in Pigeon Forge, Tennessee for $9,490, and he deposited his timeshare in the Spacebank in exchange for points.  (*Id.* ¶ 7.)

[4] The Participation Agreement states that "[b]y depositing Vacation Time in the Network Depository, a Member relinquishes all rights to the use of that Vacation Time and agrees that such deposited Vacation Time may be used by [RCI] to conduct exchanges, inspection visits, rentals, promotions and for other purposes at [RCI]'s discretion."  (Def. Appx. Ex. A. ¶ 23.)

[5] "Vacation Time" is an undefined capitalized term in the complaint, but is defined in the Participation Agreement as "recurring weeks, days or other increments of time, including occupancy rights allocated by points or timeshare interests (or parts thereof), whether such Vacation Time is owned by such member as a real estate Interest or as a right to use interest." (Def. Appx. Ex. A. § 1.)

is ever compromised" by RCI's rental program. (*Id.*)

Second, Plaintiff alleges that RCI enters into "secret agreements" with vendors to purchase and sell vacation time to the general public; and conceals evidence of sales by prohibiting vendors from identifying RCI in any materials. (*Id.* ¶¶ 30-31.) In support of same, Plaintiff lists numerous websites and RCI affiliates in his complaint that sell vacation time which should be available to members. (*Id.* ¶ 32.) But it is unclear from the complaint whether the vacation time being sold is owned by RCI or belongs to Points Members.

Third, Plaintiff alleges that RCI authorizes the use of vacation time for its own and affiliates' promotions. (*Id.* ¶ 34.) Although such use is permitted under the Participation Agreement (Def. Appx. Ex. A. ¶ 23) Plaintiff contends the breadth of RCI's promotions dilute the quality and quantity of vacation time available to members.

Finally, Plaintiff asserts that RCI's usage of vacation time as a form of employee compensation "constitutes an unconscionable commercial practice" because it diminishes the quality and quantity of vacation time available to members. (Compl. ¶ 35.)

In light of these four allegedly wrongful practices, Plaintiff filed a four count complaint seeking damages for the following: (1) violations of the New Jersey Consumer Fraud Act ("CFA"); (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) unjust enrichment. Thereafter, Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II.     STANDARD ON MOTION TO DISMISS**

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept as true all allegations in the complaint and

to view the facts in a light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949. The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Meaning, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### III.  DISCUSSION

#### A.  Consumer Fraud Violations

Plaintiff's first count alleges violations of the CFA. The CFA imposes liability for "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J.S.A. 56:8-2. In order to state a claim pursuant to the CFA, a plaintiff must plead with particularity[6] three elements: "(1) unlawful conduct;

---

[6] Plaintiff argues that his CFA claim is not governed by the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. (Pl. Br. at 21-24.) This issue remains somewhat unresolved in the Third Circuit, at least as to CFA claims not sounding in fraud. *See Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999). Nonetheless, district courts interpreting New Jersey law deem Rule 9(b) applicable where a plaintiff's CFA claim sounds in fraud. *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan 14, 2008). Since Plaintiff's CFA claim sounds in fraud, the

(2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (ellipses and internal quotations omitted).

Plaintiff satisfies all three elements of a CFA claim.  First, Plaintiff alleges unlawful conduct. Generally, unlawful conduct falls into one of three categories: (a) affirmative acts; (b) knowing omissions; and (c) regulatory violations.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) (citing N.J.S.A. 56:8-2; N.J.S.A. 56:8-4).  RCI engaged in affirmative acts through its allegedly wrongful sale of vacation time through "secret agreements" with third parties.  (Compl. ¶ 30.)  RCI also allegedly made affirmative misstatements to members.  According to the complaint, John R. Barrows, stated in a vacation publication that "no RCI member's right to a fair exchange is ever compromised by any RCI marketable inventory program."  (*Id.* ¶ 28.)  Barrows's comments are allegedly misleading because Plaintiff cites to several examples where his ability to fairly exchange vacation time has been compromised as a result of RCI's rental, sales and promotional practices.  (*Id.* ¶ 43.)

RCI also allegedly committed wrongful knowing omissions.  Although RCI discloses its use of vacation time for rentals and promotions, RCI wrongfully omits the degree to which these practices are conducted.  These omissions make "the idea that Plaintiff . . . would be able to exchange their Points for other comparable [vacation time] was illusory."  (Pl. Br. at 7.)  These practices also have a substantial affect on members' fair and reasonable use of vacation time.  (Compl. ¶ 43.)

Second, Plaintiff alleges an ascertainable loss.  Under the CFA, ascertainable loss "embrac[es] more than monetary loss," and has been broadly defined as "less than what was promised."  *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002).  By limiting both the quality

---

Court also finds Rule 9(b) applicable to this case.

and quantity of vacation time available to members through its allegedly wrongful practices, RCI has provided members less than what was promised. Moreover, due to his experience and frustration with the Points Exchange Program, Plaintiff deeded his timeshare back to the resort on May 1, 2008 for $0, the ascertainable loss recognizable here. (*Id.* ¶ 50.)

Third, Plaintiff alleges a causal relationship between Defendants' unlawful conduct and Plaintiff's ascertainable loss. Viewing the facts in a light most favorable to the non-moving party, RCI's affirmative misrepresentations and omissions regarding the extent of its rental, sales and promotional practices are sufficiently connected to Plaintiff's ascertainable loss. Accordingly, Plaintiff has satisfied all three elements of his CFA claim.

Defendant argues that Plaintiff's CFA claim is nothing more than "subjective dissatisfaction" with the terms of the Participation Agreement. (Reply Br. at 5.) This argument is factually inaccurate. Plaintiff alleges that RCI overuses rentals and promotions and engages in the selling vacation time to third parties to the detriment of Points Members and in violation of the Participation Agreement. *Compare Frederico v. Home Depot*, No. Civ.A. 05-5579(JAP), 2006 WL 624901, at *5 (D.N.J. March 10, 2006) (CFA claim dismissed because "Defendant charged Plaintiff the rate agreed upon in the Agreement."), *aff'd*, 507 F.3d 188 (3d Cir. 2007).

Defendant also argues that the Points Exchange Program does not constitute "merchandise" under the CFA. (Reply Br. at 6-7.)[7] However, this argument also fails. "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J.S.A. The Points Exchange Program falls under the definition of "merchandise"

---

[7] To be cognizable, a CFA claim must be "in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J.S.A. 56:8-2.

because it is a vacation service offered directly to the public "in the popular sense." *Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 589 (Law Div. 2000) (internal quotations omitted). The Points Exchange Program is advertised through a variety of means, including the internet, and at vacation destinations. Members of the Points Exchange Program may be more affluent than the public-at-large, but this fact hardly removes Plaintiff's claim from the broad reach of the CFA. "Indeed, courts have held that the [CFA] applies to products that, although expensive, uncommon, or only suited to the needs of a limited clientele, are nevertheless available to the public at large." *Prescription Counter v. Amerisource Bergen Corp.*, Civ. A. No. 04-5802 (SRC), 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007); *compare Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006).

### B.   Breach of Implied Covenant of Good Faith and Fair Dealing

The second count of Plaintiff's complaint alleges breach of implied covenant of good faith and fair dealing. "[I]n New Jersey the covenant of good faith and fair dealing is contained in all contracts and mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002) (quoting *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997)).

RCI's alleged conduct has the effect of injuring the right of Plaintiff to receive the fruits of his contract with RCI. RCI is alleged to have wrongfully rented and sold vacation time to third parties, and used vacation time for promotions and employee benefits. These practices severely limit the quality and quantity of vacation time available to members. Thus, count two states a claim for breach of implied covenant of good faith and fair dealing.

Defendant seeks dismissal of Plaintiff's claim for breach of implied covenant of good faith and fair dealing by again pointing to the "plain language" of the Participation Agreement. (Reply Br. at 7.) But this argument takes an unduly restrictive view of Plaintiff's allegations. Plaintiff does not dispute that RCI is permitted to rent vacation time or use it for promotions. As stated, Plaintiff takes issue with the dilution of quality and quantity of available vacation time. *Compare Green v. Am. Online*, 318 F.3d 465, 472 (3d Cir. 2003). Thus, the Court will not dismiss count two of the complaint.

### C. Breach of Fiduciary Duty

Count three of Plaintiff's complaint alleges breach of fiduciary duty. "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). A fiduciary relationship does not exist "in ordinary commercial business transactions." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998), *aff'd*, 172 F.3d 859 (3d Cir. 1998).

Defendant seeks dismissal of Plaintiff's breach of fiduciary duty claim based on the economic loss doctrine. The economic loss doctrine generally "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). Although the full scope of the economic

loss doctrine remains perhaps an "open question,"[8] federal courts interpreting New Jersey law typically use it to bar to claims alleging a "'failure of the promisor to do what he has promised.'" *Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563 (D.N.J. 2002) (quoting *LoBosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1032 (D.N.J. 1995)). Only tort claims that are extraneous to an agreement, e.g., fraud in the inducement, remain viable against the economic loss doctrine. *See Gen. Elec. Corp. v. BASF Corp.*, No. 06 Civ. 283(NRB), 2008 WL 4185870, at *17 (S.D.N.Y. Sept. 4, 2008) (discussing New Jersey law); *see e.g.*, *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 105 n.12 (3d Cir. 2001) (upholding fiduciary duty claim under Pennsylvania law where harm suffered went beyond terms of contract).

Plaintiff's breach of fiduciary duty claim is barred by the economic loss doctrine because it flows directly from the parties' contract. According to Plaintiff, RCI owed its members a fiduciary duty "by virtue of the Participation Agreement and the relationship of the parties." (Pl. Br. at 16.) Even if the Participation Agreement and the relationship of the parties created a fiduciary relationship (which they do not),[9] these reasons amount to a breach of contract dispute. As a result, count three is dismissed.

---

[8] *Q Capital Corp. v. Wilmington Trust Co.*, 2007 WL 93231, at *3 (App. Div. Jan. 12, 2007).

[9] Neither the parties relationship nor § 24 of the Participation Agreement creates a fiduciary duty for several reasons. First, fiduciary duties do not originate from ordinary commercial transactions such as the one in this case. *Alexander*, 991 F. Supp. at 438. Second, Plaintiff's reading of paragraph 24 is incorrect. Paragraph 24 of the Participation Agreement is intended to afford RCI additional rights in order to create flexibility in the exchange system, not impose additional fiduciary duties on RCI. *Compare R.J. Longo Const. Co., Inc. v. Schragger*, 218 N.J. Super. 206 (App. Div. 1987) (mandatory obligations imposed on municipal attorneys pursuant to contract). The Court expresses no view as to whether a RCI constitutes a real estate broker pursuant to N.J.S.A. 45:15-3, which would create a fiduciary relationship. *Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 256 (App. Div. 2004).

### D. Unjust Enrichment

Count four of Plaintiff's complaint seeks relief for unjust enrichment. The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Assocs. Comm. Corp. v. Wallia*, 211 N.J. Super. 231, 244 (App. Div. 1986). A plaintiff can ordinarily recover under this doctrine where "the defendant 'received a benefit, and that retention of the benefit without payment therefore would be unjust.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div.1966)). However, where an express contract governs the parties relationship, unjust enrichment is not an available means of recovery. *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280 (1951)) ("It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject.") (internal quotations omitted); *compare Palmeri v. LG Elecs. USA, Inc.*, Civil Action No. 07-5706 (JAG), 2008 WL 2945985, at *6 (D.N.J. July 30, 2008) ("At the pleading stage, this Court is not in a position to determine whether the implied contract underlying the unjust enrichment claim and the express contract are about the identical subject.").

It is evident from the complaint that Plaintiff's implied contractual theory of unjust enrichment covers identical subject matter as the Participation Agreement. Accordingly, Plaintiff is barred from seeking recovery for unjust enrichment. Count four of the complaint is dismissed.

### IV. MORE DEFINITE STATEMENT

Defendant moves for an order requiring Plaintiff to file a more definite statement of the allegations. Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

In light of the Court's summary and analysis of Plaintiff's allegations, the complaint is set forth with particularity and Defendant can reasonably prepare a response. Accordingly, Defendant's motion for a more definite statement as to counts one and two of the complaint is denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint or for a more definite statement is granted in part and denied in part.


　　　　　　　　　　　　　　　　　　　　　　*s/Peter G. Sheridan*
　　　　　　　　　　　　　　　　　　　　　　PETER G. SHERIDAN, U.S.D.J.

Dated: January 15, 2010